CLARK HILL LLP
Myriah V. Jaworski (SBN 336898)
mjaworski@clarkhill.com
One America Plaza
600 West Broadway, Suite 500
San Diego, CA 92101
Telephone:     (619) 557-0404
Facsimile:     (619) 557-0460

*Attorneys for Defendant SMARTe, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAIGE BENASUTTI, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SMARTE, INC.,<br><br>Defendant. | Case No. 5:25-cv-7456-EJD<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge: Hon. Edward J. Davila<br><br>Courtroom: 4 – 5th Fl.<br>Date: February 19, 2026<br>Time: 9:00 AM<br><br>Complaint Filed: September 3, 2025 |

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 19, 2026 at 9:00 A.M., or as soon thereafter as the matter may be heard, before the Honorable Edward J. Davila, in Courtroom 4 (Fifth Floor) of the above-entitled Court, located at San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant SMARTe, Inc. ("SMARTe" or "Defendant"), by and through its attorneys of record, will and hereby move for an order dismissing the Complaint, ECF No. 1 ("Complaint" or "Compl."), with prejudice pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure ("FRCP").

This motion is based upon the following memorandum of points and authorities, the declaration of Sanjay Gala, SMARTe's Chief Executive Officer, dated December 15, 2025 ("Gala Decl."), declaration of Myriah V. Jaworski, dated December 15, 2025 ("Jaworski Decl."), a proposed order; the complete files and records in this action; the argument of counsel; and such other matters as the Court may consider.

CASE NO.: 5:25-CV-7456-EJD

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS ....................................................... ii

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND ................................................................................................... 2

    A.    The PTFA's Legislative History ................................................................ 2

    B.    SMARTe's Business Intelligence Platform ............................................... 4

    C.    Plaintiff Paige Benasutti .............................................................................. 5

III.  LEGAL STANDARD ........................................................................................... 6

    A.    Rule 12(b)(1) Standard ............................................................................... 6

    B.    Rule 12(b)(6) Standard ............................................................................... 6

IV.   ARGUMENT ......................................................................................................... 7

    A.    Plaintiff Lacks Article III Standing ........................................................... 7

        1.    Plaintiff Has Not Suffered an Injury-in-Fact. ................................. 7

            a.    Plaintiff Has Not and Cannot Allege an Injury in Fact Because Her Cellular Phone Was Never Actually Used on SMARTe's Platform for a Commercial Purpose. ...................... 8

            b.    Plaintiff's Loss of Control Allegation Does Not Articulate a Concrete Injury ........................................................... 10

        2.    Even if Plaintiff Was Able to Articulate an Injury in Fact, that Injury is Not Fairly Traceable to SMARTe. ................................. 11

    B.    Plaintiff Fails to State a PTFA Claim Against SMARTe Under Rule 12(b)(6). ................................................................................................... 12

        1.    SMARTe's Platform Does Not "List" Cellular Phone Numbers .............. 12

        2.    SMARTe Does Not Sell a Telemarketing "Directory." ........................... 13

        3.    "Reveals" Are Not For a "Commercial Purpose." ................................... 14

            a.    The PTFA's Statutory Structure Demonstrates that "Commercial Purpose" Applies Only to Commercial Telemarketing. ................................................................. 14

            b.    Construing "Commercial Purpose" to Mean Commercial Telemarketing is Consistent with the Act's Purpose and Similar Statutes. ................................................... 15

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

c. This Court Has Held that the Publication of BCI on a B2B Corporate Intelligence Platform Does Not Constitute Commercial Use Under Parallel Right of Publicity Statutes. ...........................................................16

4. Alternatively, SMARTe is a Publisher and Exempted from the PTFA. ..................................................................................................17

C. The PTFA Violates the First Amendment. ...........................................................17

1. Publication of Business Contact Information is Protected Speech Under the First Amendment. ........................................................18

2. The PTFA's Listing Provision is Subject to Strict Scrutiny Because it is a Content-Based Regulation of Non-Commercial Speech. ...................................................................................................19

a. The Listing Provision is a Content-Based Regulation. ..................19

b. The Listing Provision Regulates Non-Commercial Speech. ..........................................................................................19

3. The PTFA's Listing Provision Fails Strict Scrutiny. ...............................21

a. The Listing Provision is Overinclusive. ........................................21

b. The Listing Provision is Underinclusive. .......................................22

c. The Listing Provision is not Narrowly Tailored. ...........................23

V. CONCLUSION...............................................................................................................24

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez-Santos v. I.N.S.*,
332 F.3d 1245 (9th Cir. 2003) ...................................................................................15

*Ambrozewicz v. 6Sense Insights, Inc.*,
3:24-CV-07489, ECF No. 44, Order Granting Motion to Dismiss (N.D. Cal.
May 2, 2025) (J. Seeborg)........................................................................2, 4, 14, 16

*Ariix, LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) ...................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................6, 7, 12

*Atlas Data Privacy Corp. v. We Inform, LLC*,
758 F.Supp.3d 322 (D.N.J. 2024) .........................................................................18, 19

*AviComm, Inc. v. Colo. Pub. Utils. Comm'n*,
955 P.2d 1023 (Colo. 1998) .......................................................................................16

*Azuz v. Accucom Corp.*,
No. 1:21-CV-01182, 2025 WL 2807653 (N.D. Ill. Oct. 2, 2025) (discussing
Illinois Right of Publicity Act (IRPA) claim)
........................................................................................................................8, 9, 10, 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................6

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983)................................................................................................19, 20

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024) .....................................................................................6

*Brayshaw v. City of Tallahassee*,
709 F. Supp. 2d 1244 (N.D. Fla. 2010).......................................................................19

*Brown v. Ent. Merchants Ass'n*,
564 U.S. 786 (2011).....................................................................................................21

*Butt v. FD Holdings, LLC*,
799 F.App'x 350 (6th Cir. 2020) .................................................................................11

*Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York*,
447 U.S. 557 (1980)......................................................................................................19

CASE NO.: 5:25-CV-7456-EJD

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT

*Clapper v. Amnesty Int'l, USA*,
568 U.S. 398 (2013)..............................................................................................................11, 12

*Cohen v. Facebook, Inc.*,
798 F. Supp. 2d 1090 (N.D. Cal. 2011) (Seeborg, J.)............................................................11

*Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*,
557 F.2d 1280 (9th Cir. 1977) .................................................................................................6

*Dex Media West Inc. v. Seattle*,
696 F.3d 952 (9th Cir. 2012) ...............................................................................2, 18, 19, 20

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)..............................................................................................................7, 8

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................................................1, 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000)..................................................................................................................7

*Fry v. Ancestry.com Operations Inc.*,
No. 3:22-CV-140, 2023 WL 2631387 (N.D. Ind. Mar. 24, 2023).....................................9, 12

*Gargus v. Upload, LLC*,
2:25-cv-8337 (C.D. Cal.) ..........................................................................................................1

*Hoffower v. Seamless Contacts Inc.*,
736 F.Supp.3d 605 (N.D. Ill. 2024) .......................................................................................10

*Holley v. Gilead Scis., Inc.*,
410 F. Supp. 3d 1096 (N.D. Cal. 2019) ...................................................................................6

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) (Rogers, J.)..............................................................10

*Jackson v. Whitepages, Inc.*,
2025 WL 2407201 (N.D.W. Va. Aug. 19, 2025).........................................................17, 18, 20

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
585 U.S. 878 (2018)................................................................................................................17

*Khamooshi v. Politico LLC*,
786 F.Supp.3d 1174 (N.D. Cal. 2025) ...................................................................................10

*Lien v. Talkdesk, Inc.*,
No. 24-CV-06467-VC, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025)
(Chhabria, J.).........................................................................................................................10

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...............................................................................................7, 8

*Malmstein v. 6Sense Insights, Inc.*,
  3:25-cv-07458 (N.D. Cal.) .............................................................................................1

*McCarthy v. United States*,
  850 F.2d 558 (9th Cir. 1988) ........................................................................................6

*Meinecke v. City of Seattle*,
  99 F.4th 514 (9th Cir. 2024) .......................................................................................21

*Metro One Telecomms., Inc. v. Comm'r*,
  704 F.3d 1057 (9th Cir. 2012) ....................................................................................12

*Mikulsky v. Noom, Inc.*,
  682 F. Supp. 3d 855 (S.D. Cal. 2023) .........................................................................10

*Opperman v. Path, Inc.*,
  87 F.Supp.3d 1018 (N.D. Cal. 2014) .............................................................................6

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  No. 16-CV-01393-JST, 2017 WL 2672113 (N.D. Cal. Jan. 19, 2017) ........................7

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) .......................................................................................19, 21, 22

*Ridgeway v. Spokeo, Inc.*,
  697 F.Supp.3d 979 (C.D. Cal. 2023) .............................................................................9

*Rooftop Restoration, Inc. v. Am. Fam. Mut. Ins. Co.*,
  418 P.3d 1173 (Colo. 2018) ........................................................................................15

*Sable Commc'ns of Cal., Inc. v. FCC*,
  492 U.S. 115 (1989) ....................................................................................................21

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ......................................................................................6

*In re Saladino*,
  71 Ill. 2d 263 (Ill. 1978) .............................................................................................12

*Sheehan v. Gregoire*,
  272 F. Supp. 2d 1135 (W.D. Wash. 2003) ..................................................................19

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ...............................................................................................17, 18

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ......................................................................................................8

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Tattered Cover, Inc. v. City of Thornton*,
   44 P.3d 1044 (Colo. 2002) ...................................................................................................17

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ..........................................................................................7, 8, 9, 11

*Troyer v. Yerba Mate Co.*,
   LLC, 2021 WL 534362 (N.D. Cal. Feb. 13, 2021) .............................................................12

*United States v. Playboy Ent. Grp., Inc.*,
   529 U.S. 803 (2000) ...........................................................................................................23

*United States v. Texas*,
   599 U.S. 670 (2023) .............................................................................................................7

*United States v. United Foods, Inc.*,
   533 U.S. 405 (2001) ...........................................................................................................19

*Verde v. Confi-Chek, Inc.*,
   No. 21 C 50092, 2021 WL 4264674 (N.D. Ill. Sept. 20, 2021) ........................................8, 9

*Vrdolyak v. Avvo, Inc.*,
   206 F. Supp. 3d 1384 (N.D. Ill. 2016) ...........................................................................16, 20

*Walters v. Metro. Educ. Enters., Inc.*,
   519 U.S. 202 (1997) ...........................................................................................................12

*White v. Samsung Elecs., Am., Inc.*,
   971 F.2d 1395 (9th Cir. 1992) ............................................................................................21

*Williams-Yulee v. Fla. Bar*,
   575 U.S. 433 (2015) ...........................................................................................................22

*Wilson v. Ancestry.com LLC*,
   No. 2:22-cv-861, 2024 WL 3992356 (S.D. Ohio Aug. 27, 2024) ........................................9

*Winsor v. Sequoia Benefits & Ins. Servs.*,
   LLC, 62 F.4th 517 (9th Cir. 2023) ........................................................................................7

**Statutes**

C.R.S. § 13-90-107(1)(h) ...........................................................................................................17

Ala. Code § 6-5-772 ("Alabama Right of Publicity Act")............................................................10

Colo. Civ. Code § 1798.100 et seq. ("Colorado Consumer Privacy Act" or
   "CCPA") ...........................................................................................................................17

1993 Colo. Legis. Serv. H.B. 93-1144 (West).............................................................................3

CASE NO.: 5:25-CV-7456-EJD

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Colo. Rev. Stat. § 6-1-303(1)................................................................................................23

Colo. Rev. Stat. § 6-1-304(4) ("Prevention of Telemarketing Fraud Act") ...................................1

Colo Stat. 6-1-302(2) ............................................................................................................14

Colo. Stat. § 6-1-101 *et seq.*.................................................................................................17

Colo. Stat. § 6-1-301 ...............................................................................................3, 14, 21, 23

Colo. Stat. § 6-1-301 *et seq.*.................................................................................................12

Colo. Stat. § 6-1-302 .........................................................................................................3, 13

Colo. Stat. § 6-1-302(1) ............................................................................................3, 14, 15, 16

Colo. Stat. § 6-1-302(2) ..................................................................................................3, 15, 16

Colo. Stat. § 6-1-303 .........................................................................................................3, 14

Colo. Stat. § 6-1-304 .................................................................................................................3

Colo. Stat. § 6-1-304(1) ....................................................................................................14, 22

Colo. Stat. § 6-1-304(4) .....................................................................................................2, 13

Colo. Stat. § 6-1-304(4)(a) ..................................................................................................3, 4

Colo. Stat. § 6-1-304(4)(a)(I) ...........................................................................................1, 3, 12

Colo. Stat. § 6-1-304(4)(b)....................................................................................................15

Colo. Stat. § 6-1-305 ..............................................................................................................14

Colo. Stat. § 6-1-305(1)(c) ......................................................................................................3

Ill. Stat. 1075/5.........................................................................................................................8

Minn. Stat. Ann. § 325E.318 ....................................................................................................23

Ohio Rev. Code § 2741.02.........................................................................................................9

Tex. Util. Code § 64.202...........................................................................................................23

**Rules**

Fed. R. Civ. P. 12(b)(1).................................................................................................1, 2, 6, 9

Fed. R. Civ. P. 12(b)(6)..................................................................................................2, 6, 12

Fed. R. Civ. P. 12(h)(3)..............................................................................................................6

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

**Other Authorities**

"List," Dictionary.com, https://www.dictionary.com/browse/list (last accessed October 26, 2025) ...........................................................................................................13

Colo. Const. Art. II, § 10 ...........................................................................................17

Dictionary.com, https://www.dictionary.com/browse/directory ................................13

https://www.smarte.pro/terms-of-service (last accessed December 13, 2025)...............5

Merriam Webster, https://www.merriam-webster.com/dictionary/directory (last accessed December 3, 2025).................................................................................13

Merriam Webster, https://www.merriam-webster.com/dictionary/list (last accessed December 3, 2025).................................................................................12

Merriam Webster, https://www.merriam-webster.com/dictionary/publishes (last accessed December 3, 2025).................................................................................17

U.S. Const. amend. I ("First Amendment")..............................................2, 17, 18, 20, 21

U.S. Const. Art. III..................................................................1, 2, 6, 7, 8, 9, 10

www.smarte.pro ..........................................................................................................4

www.smarte.pro/pricing ..............................................................................................4

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## I.  INTRODUCTION

Plaintiff Paige Benasutti ("Plaintiff") brings this putative class action lawsuit under Colorado's Prevention of Telemarketing Fraud Act, Colo. Rev. Stat. § 6-1-304(4) ("PTFA" or "Act"), against SMARTe. Section 6-1-304(4) itself is an anomaly within the PTFA. The subsection was added in 2005, but no one attempted to enforce it until enterprising lawyers discovered the provision a score years later.[1] As the Act's name reveals, the PTFA was enacted to regulate consumer telemarketers. However, this new wave of cases attempts to apply § 6-1-304(4) to even a business-to-business ("B2B") website that allows businesspeople to find each other's contact information despite having no connection to telemarketing activity. This wasn't the Colorado's legislature's intent in enacting the PTFA.

Section 6-1-304(4) prohibits "list[ing] a cellular telephone number in a directory for a commercial purpose" without consent. Colo. Rev. Stat. § 6-1-304(4)(a)(I). Here, however, Plaintiff's cellular phone number was never "listed" on SMARTe's internet-based platform for a commercial purpose because it was never accessed by any third parties other than Plaintiff's own attorneys as work product to prepare her complaint. As no commercial listing occurred, Plaintiff lacks a concrete, particularized injury in fact sufficient to satisfy Article III of the U.S. Constitution.[2] If that were not enough, Plaintiff does not even attempt allege that she felt the type

---

[1] This is one of at least three nearly identical cookie-cutter PTFA class action complaints that were filed by Plaintiff's counsel on September 3, 2025. *See, Malmstein v. 6Sense Insights, Inc.*, 3:25-cv-07458 (N.D. Cal.); *Gargus v. Upload, LLC*, 2:25-cv-8337 (C.D. Cal.). At least twenty-four others have been filed in the last year (most of which involve Plaintiff's firms involved in this case).

[2] SMARTe's FRCP 12(b)(1) motion is supported by the Declaration of its Sanjay Gala, its Chief Executive Officer, attached and cited herein as "Gala Decl." In this factual 12(b)(1) challenge, the Court may consider extrinsic evidence, and the Plaintiff bears the burden of demonstrating that this Court has subject matter jurisdiction over her claim. *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 793-94 (N.D. Cal. 2011).

CASE NO.: 5:25-CV-7456-EJD

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

of harm the PTFA was designed to prevent – deceptive telemarketing practices (e.g., that she received misleading sales calls or was a victim of a scam caller scheme). Rather, she attempts to transform the PTFA from a narrow anti-telemarketing statute into a catch-all data privacy law. *See* Compl. ¶ 1-3 (claiming the PTFA amendment aims to "uphold privacy in a digital world"). In sum, Plaintiff's own attorneys viewing her phone number on the website (but no one else ever), is not an Article III injury. *See* § V(A), *infra*.

Plaintiff's claim also fails under Rule 12(b)(6), because she fails to demonstrate the necessary elements of a Section 6-1-304(4)— that SMARTe "listed" her cellular phone number in a directory for a "commercial purpose." SMARTe is not a telemarketer, nor does it "list" or sell cellular phone numbers in "directories" for telemarketing purposes. In a similar case, this District Court found that making accessible contact information on a B2B sales and marketing platform did ***not*** amount to commercial use. *Ambrozewicz v. 6Sense Insights, Inc*., 3:24-CV-07489, ECF No. 44, Order Granting Motion to Dismiss, at \*11-13 (N.D. Cal. May 2, 2025) (J. Seeborg), attached as Exhibit 1 ("*Ambrozewicz*"). Plaintiff's generic allegations regarding "commercial purpose" are insufficient and contradict this Court's careful analysis in *Ambrozewicz*. Plaintiff fails to state a PTFA claim. *See* § V(B), *infra*.

***Finally,*** Section 6-1-304(4) violates the First Amendment because it prohibits the publishing of factual information, including information organized in "directories" or "listings." *Dex Media West Inc. v. Seattle*, 696 F.3d 952 (9th Cir. 2012) (applying First Amendment to yellow pages personal directory). Moreover, Section 6-1-304(4) – a content-based speech regulation – cannot survive strict scrutiny because it is woefully overbroad and underinclusive. *See* § V(C), *infra*.

For all of these reasons, the Court should dismiss the Complaint entirely and with prejudice under Rules 12(b)(1) and (b)(6).

## II.     BACKGROUND

### A.      The PTFA's Legislative History

The Colorado legislature enacted the PTFA in 1993 to target and prevent fraudulent telemarketing practices. Specifically, the Act's stated purpose is to combat "the widespread

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

practice of fraudulent and deceptive commercial telephone solicitation," "particularly [against] elderly, homebound, and otherwise vulnerable consumers." Colo. Stat. § 6-1-301; *see also* 1993 Colo. Legis. Serv. H.B. 93-1144 (West). The statute regulates those who make "[u]nsolicited telephone calls . . . for the purpose of inducing the person to purchase or invest in goods, services, or property" or otherwise make an offer or complete a transaction (defined as "commercial telephone sellers"). Colo. Stat. § 6-1-302(1)-(2). The PTFA regulates these "commercial telephone sellers" in a variety of ways, including by requiring that they register with the state before conducting business, by mandating disclosures to consumers regarding cancellation and refunds, and by imposing a mandatory three-day cancellation period. Colo. Stat. §§ 6-1-303, 304.

Plaintiff does not allege that her claim has anything to do with telemarketing. She does not contend that SMARTe is a telemarketer or that she has received any telemarketing calls. *See generally* Compl. Rather, her claim is based entirely on language from a 2005 amendment that added subsection (4) to Section 6-1-304 and which has remained almost entirely dormant for the last twenty years. The 2005 amendment states that:

> a person commits an ***unlawful telemarketing practice*** if the person knowingly …
> ***[l]ists*** a cellular telephone number ***in a directory*** for a ***commercial purpose*** unless
> the person whose number has been listed has given affirmative consent[.]

Colo. Stat. § 6-1-304(4)(a)(I) (emphasis added) (the "Listing Provision"). The Listing Provision provides a private right of action to "the owner of the cellular telephone," with statutory penalties ranging from $300-$1,000. Colo. Stat. § 6-1-305(1)(c).

The Listing Provision does not define the key terms that create the basis of liability – "list," "directory" and "commercial purpose." *See* Colo. Stat. § 6-1-302 & -304(4)(a)(I). The amendment's stated aim, however, is to combat "unlawful telemarketing practice[s]." *See* Colo. Stat. § 6-1-304(4)(a) ("a person commits an unlawful telemarketing practice…"). Despite Plaintiff's attempt to characterize the Listing Provision as a "digital privacy" protection statute, the word "privacy" never appears in the amendment or anywhere else in the Act. Indeed, the Listing Provision neither includes the word "privacy" nor generally prohibits the listing of a

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

cellular phone number in a directory – *its prohibition applies only where the listing is for a "commercial purpose," which is not defined in the statute*. *Id*.

### B.     SMARTe's Business Intelligence Platform

SMARTe operates a business-to-business corporate intelligence platform at www.smarte.pro ("Platform"). Compl. ¶ 15. The Platform provides a host of tools that are designed to assist corporate users, such as advanced search capabilities, AI agents and live customer success managers to identify buying groups and provide insights, and data validation. Gala Decl. ¶ 5. The Platform enables users to view the professional roles and titles of individuals associated with a particular company or industry, along with their business contact details and other professional information (collectively, "Business Contact Information" or "BCI"). *Id.* at ¶ 6. Not every BCI record contains a phone number, and many direct dial numbers available on the Platform are *not* cellular phone numbers. *Id.* at ¶ 18. According to Plaintiff, BCI is "sourced from various public records" received from "third-party data brokers." Compl. ¶ 4.

Contrary to the Plaintiff's allegations, the Platform is not "public." Compl. ¶ 16; Gala Decl. ¶ 7. Rather, a business user must create an account with SMARTe using their business email address and agree to SMARTe's terms and conditions to register for access. Gala Decl. ¶¶ 8-12. After registration, users must choose a membership plan, which is determined by the organization's size and the level of access required. *Id*. at ¶ 9, *see* www.smarte.pro/pricing (last visited December 1, 2025). Each plan offers various monthly "credit" allowances, which are expended to "reveal" professional profiles. *Id.*; Gala Decl. at ¶ 15-16. The basic free plan ("Free Plan") is intended for a single business user and offers free filtered searches, but only 10 credits per month. *Id*. at ¶ 17.[3]

Once users select a membership plan, they can access the Platform and may apply filters to search for companies, professionals, or other relevant business-related information. *Id.* at ¶ 14.

_____

[3] In *Ambrozewicz,* Judge Seeborg held that a user's ability to unlock contact information for free on a business-to-business corporate intelligence platform does not constitute a commercial use under the right of publicity statutes of California, Illinois, Ohio, and Indiana. Ex. 1 at 11-13.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

The user can then expend credits to "reveal" individual profiles and view associated BCI, which can include email addresses, direct dial numbers, and information regarding an individual's corporate position. Compl. ¶ 19; *Id*. at ¶ 15. A user can only access a professional's BCI by revealing their profile with credits. *Id.* at ¶ 16. Under the Platform's terms of use, users are "granted a license to use the Service and Output Data for (and solely for) [their] personal and/or [] internal business purposes only." *Id*. at ¶ 13, https://www.smarte.pro/terms-of-service (last accessed December 13, 2025). Plaintiff does not allege SMARTe acts as a telemarketer or engages in any form of telemarketing. *See generally* Compl.

### C. Plaintiff Paige Benasutti

1. Plaintiff alleges that she is a resident of Mesa County, Colorado. Compl. ¶ 7. Plaintiff's Complaint provides screenshots from the Platform, including a screenshot of her profile with BCI. Compl. ¶ 17-18.[4] Plaintiff's BCI includes a direct dial phone number which Plaintiff alleges is a cellular number. Compl. ¶¶ 7, 17-18. The Platform maintains a log of every instance a user accesses an individual's profile. Gala Decl. ¶ 22. These logs record: (a) the date the profile was revealed, (b) the email address of the user who accessed the profile, (c) and the name of the individual whose profile was revealed. *Id*. at ¶ 23.

The following <u>Table 1</u> lists every instance in which Plaintiff's profile was revealed:

| User | Reveal Date(s) |
|---|---|
| kzhang@crosnerlegal.com | 7/21/2025 |
| kurt@crosnerlegal.com | 8/29/2025 |

*See id.* at ¶ 24. As demonstrated in the Table, Plaintiff's BCI has exclusively been accessed by Plaintiff's own counsel. *Id.*

---

[4] While Plaintiff alleges that she is a resident of Colorado, her cell phone number contains a Pennsylvania area code. Jaworski Decl. ¶ 4-6.

CASE NO.: 5:25-CV-7456-EJD

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## III. LEGAL STANDARD

### A. Rule 12(b)(1) Standard

Rule 12(b)(1) challenges to Article III standing may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The party asserting subject matter jurisdiction bears the burden of establishing it." *Holley v. Gilead Scis., Inc.*, 410 F. Supp. 3d 1096, 1100 (N.D. Cal. 2019). Where the attack is facial, the court must accept all material allegations in the complaint as true and construe them in favor of the party asserting jurisdiction. *Fraley v. Facebook, Inc.*, 830 F.Supp.2d 785, 793 (N.D. Cal. 2011). But where, as here, the attack is ***factual***, "the court need not presume the truthfulness of the plaintiffs' allegations." *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment . . . Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction." *Fraley*, 830 F. Supp. 2d at 793-794 (citing *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction"); *see also Bowen v. Energizer Holdings, Inc.,* 118 F.4th 1134, 1143 (9th Cir. 2024) (considering extrinsic evidence in as-applied Rule 12(b)(1) challenge to determine the existence of any material issue of fact that required discovery). A district court may permit discovery to determine if it has subject matter jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). "If the court determines at any time that it lacks subject matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3).

### B. Rule 12(b)(6) Standard

"To survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Opperman v. Path, Inc.*, 87 F.Supp.3d 1018, 1035 (N.D. Cal. 2014) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)). "On a motion to dismiss, the Court accepts the material facts alleged in the complaint, together with all reasonable inferences to be drawn from those facts, as true." *Oracle Am., Inc. v. Hewlett Packard Enter. Co*., No. 16-CV-01393-JST, 2017 WL 2672113, at *1 (N.D. Cal. Jan. 19, 2017) (citation omitted). However, the "tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## IV. ARGUMENT

### A. Plaintiff Lacks Article III Standing.

Article III standing is a "bedrock constitutional requirement" and "an essential and unchanging part of the case-or-controversy requirement of Article III." *United States v. Texas*, 599 U.S. 670, 675 (2023); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To meet the requirements of Article III standing, Plaintiff must show that: "(1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc*., 528 U.S. 167, 180-81 (2000); *see Winsor v. Sequoia Benefits & Ins. Servs*., LLC, 62 F.4th 517, 523 (9th Cir. 2023) (*quoting TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "Article III standing requires a concrete injury even in the context of a statutory violation," and the "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *TransUnion*, 594 U.S. at 426. Furthermore, "the risk of future harm on its own does not support Article III standing." *Id.* at 441. Plaintiff fails every element of this bedrock Constitutional requirement because she has not "suffered any harm *at all*." *Id.* at 440 (emphasis in original).

### 1. Plaintiff Has Not Suffered an Injury-in-Fact.

"An injury in fact must be 'concrete,' meaning that it must be real and not abstract." *Food & Drug Admin. v. All. for Hippocratic Med*., 602 U.S. 367, 381 (2024) (citing *TransUnion*, 594 U.S. at 424). "The injury also must be particularized; the injury must affect 'the plaintiff in a

7 CASE NO.: 5:25-CV-7456-EJD

personal and individual way' and not be a generalized grievance." *Id*. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1). Thus, a "general legal, moral, ideological, or policy objection" is not an Article III injury-in-fact. *Id.* Nor is a "bare procedural violation" of a statute. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Plaintiff lacks an injury-in-fact because her cellular phone number was never disclosed by SMARTe to a third-party for commercial use, nor will it ever be.

           **a.**       **Plaintiff Has Not and Cannot Allege an Injury in Fact Because Her Cellular Phone Was Never Actually Used on SMARTe's Platform for a Commercial Purpose.**

In the context of statutes that punish the commercial use of an individual's information, courts have logically held that for a plaintiff to have suffered an Article III injury-in-fact, the alleged commercial use must have actually occurred. *See Azuz v. Accucom Corp*., No. 1:21-CV-01182, 2025 WL 2807653, at *6 (N.D. Ill. Oct. 2, 2025) ("[t]he mere presence of Plaintiff's information on the [defendant's] website causes no concrete injury *if it is not accessed by a third party* . . .") (emphasis added) (discussing Illinois Right of Publicity Act (IRPA) claim) (citing *TransUnion*, 594 U.S. at 434); *TransUnion*, 594 U.S. at 434 ("A [defamatory] letter that is not sent does not harm anyone, no matter how insulting the letter is"); *Verde v. Confi-Chek, Inc*., No. 21 C 50092, 2021 WL 4264674, at * 1, 5 (N.D. Ill. Sept. 20, 2021) (*TransUnion* "require[s] . . . disclosure to a third party to allege a concrete injury caused by a violation of the IRPA").

Because the PTFA Listing Provision has only recently been revived by enterprising plaintiffs' attorneys, there is currently no federal precedent specifically addressing what constitutes an injury in fact under Article III for such claims. Nevertheless, decisions interpreting Article III standing in the context of state right of publicity laws offer a useful parallel. While the Colorado PTFA prohibits knowingly "[l]ist[ing]" a cellular phone number for commercial purposes without the owner's consent, right of publicity statutes generally bar the use of a person's identity for a commercial purpose without consent. *See e.g*., 765 Ill. Stat. 1075/5 (prohibiting the "use or holding out" of an individual's identity for a "commercial purpose"). In essence, both statutes restrict use of personal information for a commercial purpose —whether the use is listing a cell phone number or using someone's identity—without consent (subject to exceptions as noted below).

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

The Northern District of Illinois' recent decision in *Azuz*, 2025 WL 2807653, is instructive. In *Azuz*, the plaintiff asserted an Illinois right of publicity claim against websites that sold public record reports. *Id*. at *1-2. The plaintiff claimed that the alleged appearance of her name in the website's search engine results was a commercial use of her identity. *Id*. In a Rule 12(b)(1) factual challenge to Article III standing, the website operator demonstrated that the plaintiff's information had only appeared in search results conducted by her own counsel. *Id*. at *2. The district court granted the website's as-applied challenge, explaining:

> **The mere presence of Plaintiff's information on the [defendant's] website causes no concrete injury if it is not accessed by a third party for [a] commercial purpose**. *See TransUnion*, 594 U.S. at 434 ("A [defamatory] letter that is not sent does not harm anyone, no matter how insulting the letter is.").
>
> Just as the fact that a credit file contains inaccurate information causes no concrete harm if it is not disclosed to a third party, *TransUnion* 594 U.S. at 434, a person's identity is not appropriated under the IRPA unless it is used for a commercial purpose.[] Proof that the statute was facially violated is not enough to demonstrate an actionable injury. **Plaintiff's injury is self-inflicted, not for [defendant's] commercial purpose as the IRPA requires**.

*Id*. at *6 (n.7 omitted; emphasis added). Other courts have reached similar conclusions. *See Verde*, 2021 WL 4264674, at * 1, 4 (*TransUnion* "require[s] . . . disclosure to a third party to allege a concrete injury caused by a violation of the IRPA"); *Wilson v. Ancestry.com LLC*, No. 2:22-cv-861, 2024 WL 3992356 at * 1, 7 (S.D. Ohio Aug. 27, 2024) (plaintiff lacked an injury in fact where the "facts before the Court establish[ed] that the [alleged misappropriation of plaintiff's] likeness never existed, so the underlying alleged commercial use and misappropriation never occurred" (applying Ohio right of publicity statute, Ohio Rev. Code § 2741.02); *Fry v. Ancestry.com Operations Inc*., No. 3:22-CV-140, 2023 WL 2631387 at * 1, 6 (N.D. Ind. Mar. 24, 2023) (if "the only uses of [plaintiffs] likeness in [defendants'] advertising" was the display on the website to his own "attorneys during the investigation and preparation of the Complaint," then plaintiff "would not have standing under his actual injury theory because his injury would be entirely self-inflicted" (applying Indiana's right of publicity statute, Ind. Code § 32-36-1-8)); *Ridgeway v. Spokeo, Inc*., 697 F.Supp.3d 979, 984-5 (C.D. Cal. 2023) (finding that "merely pleading a statutory violation is not enough" and that plaintiff failed to plead an article III injury-in-fact where he failed to allege

9                                                          CASE NO.: 5:25-CV-7456-EJD

that "anyone actually searched for or viewed his [identity]" on the defendant website (applying Alabama Right of Publicity Act, Ala. Code § 6-5-772)). *See also Hoffower v. Seamless Contacts Inc.,* 736 F.Supp.3d 605, 614-15 (N.D. Ill. 2024) (finding that plaintiff's IRPA claim failed on the merits because viewing solely by party's own counsel was not a "commercial" use).

Here, Plaintiff's PTFA claim is premised on the assertion that SMARTe "listed" Plaintiff's information (specifically, a cellular phone number) for a commercial purpose without obtaining consent. However, Plaintiff's cell phone number, like the information at issue in *Azuz*, was never accessed by anyone other than Plaintiff's own attorney. *See* Gala Decl. ¶ 24. Thus, there was no actual commercial use of her cell phone number, and so Plaintiff has no concrete injury.[5]

### b. Plaintiff's Loss of Control Allegation Does Not Articulate a Concrete Injury.

Plaintiff alleges in a vague and conclusory manner that she and other Coloradans' cell phone numbers have "inherent economic value," and thus SMARTe's practices have caused them to suffer injury from the loss of control over their "personal data." Compl. ¶ 22. Plaintiff's loss of control allegation fails to establish a concrete injury for several reasons.

*First*, the PTFA is aimed at preventing telemarketing fraud, and is not a general-purpose privacy law. *See* § II(A), *supra* (discussing the PTFA's legislative history). The PTFA does not generally prohibit the listing of a cellular phone number; the Act only prohibits listing a cellular phone number for "commercial purpose." Colo. Stat. § 6-1-304(4). In any event, this Court has held that the alleged disclosure of "basic contact information, including one's email address [and] ***phone number***" does not constitute an injury sufficient to satisfy the Article III injury requirement. *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (Rogers, J.) (emphasis added); *Lien v. Talkdesk, Inc.*, No. 24-CV-06467-VC, 2025 WL 551664, at \*1 (N.D. Cal. Feb. 19, 2025) (Chhabria, J.) (no Article III standing for CIPA claim based on alleges disclosure of "plaintiffs' phone numbers); *Khamooshi v. Politico LLC*, 786 F.Supp.3d 1174, 1179 (N.D. Cal. 2025) (citations omitted) (Kim, M.J.) (disclosure of basic contact information insufficient); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (disclosure of "basic contact information,

---

[5] For this reason, Plaintiff's claim also fails on the merits. *See infra* Section IV(B)(3).

such as [an] email address or phone number . . . does not bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts").

*Second*, even if the disclosure and loss of control over basic information such as a cellular phone number constituted a concrete injury, Plaintiff alleges no facts demonstrating (1) that theorical publication of her cell number has resulted in disclosure and/or loss of control, (2) that her cell number has commercial value, (3) that her cell number is not already publicly accessible on other platforms, and (4) how she could be potentially injured by the commercial listing of her phone number. *See Cohen v. Facebook, Inc*., 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (Seeborg, J.) (plaintiffs asserting a right-of-publicity claim "must, at a minimum, plead that they suffered mental anguish as a result of the alleged misappropriation, *and a plausible supporting factual basis for any such assertion*." (emphasis added)). Thus, Plaintiff has not plausibly established that SMARTe's alleged "list[ing]" of her phone number has robbed her of "control" over the number. *See* Compl. ¶ 22.

*Third,* Plaintiff cannot demonstrate a risk of harm based on a potential for future disclosure because SMARTe has treated this Complaint as an opt-out request and has permanently removed Plaintiff's profile and related BCI from the Platform. Gala Decl. ¶ 26; *see also TransUnion*, 594 U.S. at 436 (risk of harm, by itself, is not a sufficiently concrete injury).

This Court should dismiss Plaintiff's Complaint because she lacks an injury in fact.

**2.  Even if Plaintiff Was Able to Articulate an Injury in Fact, that Injury is Not Fairly Traceable to SMARTe.**

Plaintiff also fails Article III's traceability requirement because any purported injury based on her *own attorneys'* actions is self-inflicted and therefore is not traceable to SMARTe. *See Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 416 (2013) ("In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."); *Butt v. FD Holdings, LLC*, 799 F.App'x 350, 353 (6th Cir. 2020) ("[a]ny injury that [the plaintiff] conceivably suffered was therefore self-inflicted, which means that it was not 'fairly traceable to the challenged conduct of the defendant.'") (citation omitted); *Azuz*, 2025 WL 2807653, at *6 (viewing by plaintiff's own attorney was a self-inflicted

injury); *Fry*, 2023 WL 2631387 at \*5 (explaining that it "defies all logic" to permit a plaintiff to "manufacture standing by inflicting harm on themselves" based exclusively on "advertising occur[ing] only to [her] attorneys for the purpose of litigation" (quoting *Clapper*, 568 U.S. at 416); *see also In re Saladino*, 71 Ill. 2d 263, 276 (Ill. 1978) (attorneys cannot expose client to risk of privacy interests or pecuniary loss).

### B. Plaintiff Fails to State a PTFA Claim Against SMARTe Under Rule 12(b)(6).

Plaintiff's Complaint also fails to state a valid claim. "A complaint must allege sufficient facts to state a facially plausible claim for relief." *Troyer v. Yerba Mate Co.*, LLC, 2021 WL 534362, at \*1 (N.D. Cal. Feb. 13, 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To establish a violation of the Listing Provision (Colo. Stat. § 6-1-304(4)(a)(I)), Plaintiff must demonstrate that SMARTe (1) knowingly, (2) listed her cellular phone number, (3) in a directory, (4) for a commercial purpose and (5) without affirmative consent. As previously discussed in the PTFA's legislative history section, this provision is aimed at prohibiting "unlawful telemarketing practice[s]." *Id.*; § II(A), *supra*. Plaintiff's Complaint fails to plausible allege facts establishing the "listing," "directory," and "commercial purpose" elements of the PTFA.

### 1. SMARTe's Platform Does Not "List" Cellular Phone Numbers.

The PTFA does not define "listing." *See* Colo. Stat. § 6-1-301 *et seq*. Where statutory terms are not defined, "words in a statute are assumed to bear their ordinary, contemporary, common meaning." *Walters v. Metro. Educ. Enters., Inc*., 519 U.S. 202, 207 (1997) (citation omitted). "To ascertain the plain meaning of terms, [courts] consult the definitions of those terms in popular dictionaries." *Metro One Telecomms., Inc. v. Comm'r*, 704 F.3d 1057, 1061 (9th Cir. 2012) (citation omitted).

The plain meaning of a "list" is "a simple series of words or numerals (such as the names of persons or objects)," an "official roster," "a catalog," or a "checklist."[6] The defining feature of a list is "series of names or other items written or printed together in a ***meaningful grouping or***

---

[6] "List," Merriam Webster, https://www.merriam-webster.com/dictionary/list (last accessed December 3, 2025).

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*sequence* to as to constitute a record."[7] Viewed in light of the PTFA's legislative purpose, § 6-1-304(4) appears aimed at regulating the sale of lists of Colorado cellular phone numbers to telemarketers. *See* § II(A), *supra*.

Plaintiff's own allegations demonstrate that SMARTe's Platform does not provide *lists* of cellular phone numbers organized in a meaningful grouping or sequence. *See* Compl. ¶¶ 15-19. In the first instance, not all profiles include BCI and/or a phone number specifically. Where a phone number is included on the Platform, it is not necessarily a cellular phone number. Gala Decl. ¶ 18. Further, Plaintiff does not allege that users can search for an individual by their cellular phone number. Compl. ¶¶ 16-17 (user may "search for individuals by name, job title, location, company, or skills"); *see also* Gala Decl. ¶ 14. Applying the plain and ordinary meaning of the term "list," the Platform is not a "list," and certainly is not a telemarketing list.

### 2.     SMARTe Does Not Sell a Telemarketing "Directory."

The PTFA also fails to define the term "directory." *See* Colo. Stat. §§ 6-1-302 & -304(4). The ordinary dictionary definition of "directory" is "an alphabetical or classified list (as of names and addresses)."[8] When analyzed in conjunction with the definition of "list" and in light of the PTFA's statutory purpose of preventing telemarketing fraud, it is apparent that § 6-1-304(4) narrowly applies to the sale of compiled lists containing the cellular phone numbers of Colorado residents to telemarketers.

SMARTe's Platform plainly does not sell a directory of cellular phone numbers. While a revealed profile *may* include BCI such as cell phone numbers, many profiles do not. Gala Decl. ¶

[7] "List," Dictionary.com, https://www.dictionary.com/browse/list (last accessed October 26, 2025) (emphasis added).

[8] "Directory," Merriam Webster, https://www.merriam-webster.com/dictionary/directory (last accessed December 3, 2025). *See also,* "directory," Dictionary.com, https://www.dictionary.com/browse/directory ("**a book containing an alphabetical index of the names and addresses of persons** in a city, district, organization, etc., or of a particular category of people." (emphasis added)) (last accessed October 26, 2025).

CASE NO.: 5:25-CV-7456-EJD
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

18. Where a cellular phone number is included as part of an individual's BCI, that number is part of a larger comprehensive business profile generated by the Platform. *See id*.; Compl. ¶ 18. More succinctly – SMARTe does not discretely or separately list, sort, or monetize access to cellular phone numbers. *Id.* Users are permitted to use the Platform for "personal and/or [] internal business purposes only," and Plaintiff's counsel (kzhang@crosnerlegal.com) was able to access Plaintiff's BCI, which included her phone number*, for free. Id*. at ¶¶ 13, 25.

### 3.   "Reveals" Are Not For a "Commercial Purpose."

Finally, although PTFA also fails to define "commercial purpose," the context of the PTFA demonstrate that a use for a "commercial purpose" is one that arises out of telemarketing activity, which the Act generally defines as a "plan, program or campaign to induce the purchase of one of more goods or services." *See* Colo Stat. 6-1-302(2) (defining "telemarketing" and "commercial telephone solicitation"). Such a reading is consistent with the PTFA's structure and statutory purpose, and construing "commercial purpose" in this manner prevents punishing innocent conduct that in no way furthers the PTFA's stated objectives. This interpretation is also consistent with the treatment of the term "commercial" use or purpose in other statutory schemes. Most importantly, as explained above, this Court has already evaluated a substantially similar B2B corporate intelligence platform and has determined that it is not a "commercial user" of identities under a broader right of publicity regime. *See* Ex. 1, *Ambrozewicz* at *11-13.

### a.   The PTFA's Statutory Structure Demonstrates that "Commercial Purpose" Applies Only to Commercial Telemarketing.

The PTFA regulates the "use of telephones for *commercial* solicitation." Colo. Stat. § 6-1-301 (emphasis added; declaring that purpose is to curb "fraudulent and deceptive commercial telephone solicitation"). The statute primary regulates "[c]ommercial telephone seller[s]," who are people that "in the course of such person's business, vocation, or occupation, on the person's own behalf or on behalf of another person, causes or attempts to cause a commercial telephone solicitation to be made." Colo. Stat. § 6-1-302(1); *see also* Colo. Stat. §§ 6-1-303, -304(1), and -305 (discussing "*commercial* telephone solicitation" and "*commercial* telephone seller"). The

CASE NO.: 5:25-CV-7456-EJD

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

PTFA provides an exception to liability under § 6-1-304(4) when a "commercial telephone solicitation . . . is in relation to a preexisting commercial relationship." Colo. Stat. § 6-1-304(4)(b).

In sum, every use of the term "commercial" within the PTFA, including in the defined terms "commercial telephone seller" and "commercial telephone solicitation," relate to a person engaging in telemarketing activity. Colo. Stat. §§ 6-1-302(1)-(2). Under Colorado's canons of statutory interpretation, this Court should find that the undefined term "commercial purpose" is limited – consistent with the term's use throughout the PTFA – to commercial transactions that arise out of "telemarketing" or "telephone solicitation," as those terms are expressly defined in the Act. *See Rooftop Restoration, Inc. v. Am. Fam. Mut. Ins. Co*., 418 P.3d 1173, 1176 (Colo. 2018) (in interpreting statutes, Colorado courts should "aim to ascribe the same meaning to words or phrases used throughout a statutory scheme, absent any manifest indication to the contrary."); *see also Alvarez-Santos v. I.N.S.*, 332 F.3d 1245, 1250 (9th Cir. 2003) ("We generally presume that Congress intends the same meaning when it uses the same word throughout a statute.").

### b. Construing "Commercial Purpose" to Mean Commercial Telemarketing is Consistent with the Act's Purpose and Similar Statutes.

Limiting the statutory term "commercial purpose" to defined telemarketing activities is not only consist with the PTFA's purpose; it also avoids nonsensical results and creates harmony with parallel statutes.

If not limited to telemarketing activities, the application of § 6-1-304(4) to apply to *any* "commercial purpose" would punish Minor, inconsequential acts that have nothing to do with the PTFA's purpose. For example, a small business manager creating a list of employees' cellular phone numbers for emergency shift coverage could constitute a violation of the § 6-1-304(4) because it is tangentially related to the commercial purpose of operating a business. Such an interpretation would also render § 6-1-304(4)'s exception superfluous and nonsensical. Section § 6-1-304(4)(a)(I) prohibits listing a cellular phone in a directory for a commercial purpose, but subsection (4)(b) exempts from liability a "commercial telephone solicitation that is in relation to a preexisting commercial relationship." The PTFA defines a "commercial telephone solicitation" in terms of an "unsolicited telephone call" from a telemarketer (*i.e.,* a "Commercial telephone

CASE NO.: 5:25-CV-7456-EJD

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

seller"). Colo. Stat. §§ 6-1-302(1), (2). Thus, if § 6-1-304(4)'s listing provision applied to *any* "commercial purpose," a telemarketer with a pre-existing relationship with a cell phone owner would be exempt from liability under (4)(b), but a non-telemarketer with a pre-existing relationship with a cellular phone owner would fall outside of scope of the exemption. It would make little sense for the Colorado Legislature to have afforded telemarketers more leeway than non-telemarketers who incidentally listed cellular phones for some tangential commercial purpose. This Court should avoid a "statutory interpretation that defeats the legislative intent or leads to an absurd result." *AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023, 1031 (Colo. 1998).

       **c.**       **This Court Has Held that the Publication of BCI on a B2B Corporate Intelligence Platform Does Not Constitute Commercial Use Under Parallel Right of Publicity Statutes.**

Finally, this Court should follow *Ambrozewicz* and find that the ability to access information on a business-to-business corporate intelligence platform like the SMARTe Platform does not constitute use for a commercial purpose. *See* Ex. 1 at 11-13.

In *Ambrozewicz,* six plaintiffs claimed that the structural elements of a website platform – namely the ability to apply filters and then use free credits to view BCI on of their profiles in close proximity to an alleged advertisement – constituted a commercial use of their identity under several states' right of publicity statutes. *Id.* at 1-3. Applying the "commercial purpose" prong of the right to publicity laws, Judge Seeborg found that the "use of the Plaintiffs' information is not commercial in nature," because there was not a "commercial nexus between any one individual identity" and the "advertise[ment of the platform']s products." *Id*. at 11-12 ("[T]he individual information [on the platform] are not advertisements for the paid services Defendant also provides." (citing *Vrdolyak v. Avvo, Inc*., 206 F. Supp. 3d 1384, 1388 (N.D. Ill. 2016)).

Judge Seeborg's discussion of the platform in *Ambrozewicz* is directly applicable to Plaintiff's PTFA claim. Just as the platform in *Ambrozewicz* did not make use of the plaintiffs' identity information (which would include cellular phone numbers) to advertise its own or other's products, the SMARTe Platform does not use the cellular phone numbers of Colorado citizens to advertise its own or other's products. This Court should follow *Ambrozewicz* and hold that SMARTe's use of Plaintiff's BCI on its Platform does not constitute commercial use.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

**4. Alternatively, SMARTe is a Publisher and Exempted from the PTFA.**

The Colorado Consumer Protection Act (CCPA) is codified at Title 6, Article 1 of the Colorado Revised Statutes. Colo. Stat. § 6-1-101 *et seq*. The PTFA is Part 3 of the CCPA. *Id.* Section 6-1-106(1)(b) of the general consumer protection statutes states that that "this Article" (*i.e.*, all of Article 1) "does not apply to: . . . [p]ublishers, including outdoor advertising media, advertising agencies, broadcasters, or printers engaged in the dissemination of information or reproduction of printed or pictorial matter who publish, broadcast, or reproduce material without knowledge of its deceptive character."

The CCPA does not define the term "publishers," but the ordinary definition of "publish" is to "make generally known" or "to disseminate to the public."[9] By Plaintiff's own allegations, SMARTe's Platform is "publicly accessible" and engages in "data publishing activit[y]" of "data, sourced from various public records and third-part[ies]." Compl. ¶¶ 4, 21. Accordingly, and alternatively, this Court should find that SMARTe's Platform is entitled to the CCPA's publisher exemption.

**C.     The PTFA Violates the First Amendment.**

"The First Amendment . . . forbids abridgment of the freedom of speech." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 891-92 (2018). The Colorado Constitution provides even broader protection. Colo. Const. Art. II, § 10; *Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044, 1054 (Colo. 2002) ("the Colorado Constitution provides broader free speech protections than the Federal Constitution"). The PTFA's anomalous Listing Provision clearly violates these sacred protections through a vague and broad prohibition of truthful speech.

To begin, there is no doubt that Colorado's prohibition of the publication of cellular phone numbers is a regulation of speech that falls within the ambit of the First Amendment. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570-71, 580 (2011) ("dissemination of information [is] speech within the meaning of the First Amendment"); *Jackson v. Whitepages, Inc.*, 2025 WL 2407201, at

---

[9] "Publish," Merriam Webster, https://www.merriam-webster.com/dictionary/publishes (last accessed December 3, 2025).

CASE NO.: 5:25-CV-7456-EJD

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*7 (N.D.W. Va. Aug. 19, 2025) (publishing factual information, including contact information, constitutes speech). *See* § IV(C)(1), *infra*.

Because the Listing Provision is a speech regulation, this Court applies a two-step inquiry to evaluate its constitutional validity: ***First***, the Court determines the appropriate level of scrutiny to apply to the challenged regulation. ***Second,*** the Court determines if the challenged regulation can withstand that scrutiny. Here, the Listing Provision is subject to this Court's most rigorous review – strict scrutiny – because it is a content-based regulation of truthful non-commercial speech. *See* § IV(C)(2), *infra*. And under that scrutiny, the Listing Provision quickly topples because it is poorly tailored and in no way the least restrictive means to further Colorado governmental interest in curbing telemarketing fraud and abuse. *See* § IV(C)(3), *infra*.

### 1.      Publication of Business Contact Information is Protected Speech Under the First Amendment.

The publishing of factual information, including contact information (e.g., telephone numbers, names, and addresses) that appear in professional directories, is speech under well-settled Supreme Court and Ninth Circuit precedent. *See Sorrell*, 564 U.S. at 570-71, 580 ("dissemination of information [is] speech within the meaning of the First Amendment," further explaining that "[f]acts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs."); *Dex Media West, Inc. v. City of Seattle,* 696 F.3d 952, 965 (9th Cir. 2012) ("yellow pages directories are entitled to full First Amendment protection"); *see also Jackson,* 2025 WL 2407201, at *7 (publishing factual information, including data, constitutes speech); *Atlas Data Privacy Corp. v. We Inform, LLC,* 758 F.Supp.3d 322, 333–34 (D.N.J. 2024) (rejecting the argument that personal information, such as home addresses and phone numbers, is merely data and not speech, ultimately holding that the dissemination of such information is communicative and protected under the First Amendment).

Like the defendants in *Dex Media West* and *Atlas Data Privacy Corp*, SMARTe publishes contact information on its Platform. Therefore, the BCI displayed on SMARTe's Platform is speech that is entitled to First Amendment protection.

### 2. The PTFA's Listing Provision is Subject to Strict Scrutiny Because it is a Content-Based Regulation of Non-Commercial Speech.

Two factors are relevant to determining the appropriate level of scrutiny: (1) whether the Listing Provision is a content-based or content-neutral regulation, and (2) whether the regulated speech is commercial or non-commercial. *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York,* 447 U.S. 557, 566 (1980); *Dex Media West, Inc.*, 696 F.3d at 956-7. Content-based restrictions on non-commercial speech are reviewed under strict scrutiny, whereas similar restrictions on commercial speech are reviewed more leniently under intermediate scrutiny. *See Central Hudson*, 447 U.S. at 566. The Listing Provision is subject to strict scrutiny because it is a content-based regulation of non-commercial speech.

#### a. The Listing Provision is a Content-Based Regulation.

Courts have uniformly found restrictions on the dissemination of contact information like addresses and phone numbers to be content based. *See Atlas Data Privacy Corp.* 758 F. Supp. 3d at 335 (holding that prohibiting disclosure of home addresses and telephone numbers is content based restriction on speech); *Brayshaw v. City of Tallahassee,* 709 F. Supp. 2d 1244, 1249-50 (N.D. Fla. 2010) (holding that a state law prohibiting the disclosure of "the residence address or telephone number of any law enforcement officer" was "clearly content-based, as it restricts speech based [on] its subject"); *Sheehan v. Gregoire,* 272 F. Supp. 2d 1135, 1146 (W.D. Wash. 2003) (holding that a statute barring publication of address, phone number, date of birth, or Social Security number of law enforcement or court-related personnel was content-based "on its face"). By restricting speech "based on its communicative content," the Listing Provision is content based. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

#### b. The Listing Provision Regulates Non-Commercial Speech.

The publication of cell phone numbers is non-commercial speech because it "does [] more than propose a commercial transaction." *United States v. United Foods, Inc*., 533 U.S. 405, 409 (2001). To determine whether speech is commercial or non-commercial, the Supreme Court directs district courts to consider whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation (the "*Bolger* factors"). *Bolger v.*

*Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983). The *Bolger* factors are important guideposts but are not determinative. *Id.* at 67 n.14 ("Nor do we mean to suggest that each of the characteristics present in this case must necessarily be present in order for speech to be commercial.").

The first two factors are entirely in SMARTe's favor: Plaintiff neither alleges that publication of cellular phone numbers is an advertisement, nor that it refers to a particular product. First, by Plaintiff's own allegations, cellular phone numbers are not advertised or part of any advertisement. Compl. ¶¶ 16-18. Rather, a user can access a cellular phone number for free *after* signing up for the Platform. *Id.* In other words, the cellular phone numbers are not used to entice a user to join the Platform. Second, Plaintiff does not allege that the publication of cellular phone numbers refers to a specific product. *Id.*; *see Bolger*, 463 U.S. at 66.

That leaves only the third factor – SMARTe's alleged economic motivation. *See* Compl. ¶ 21 (alleging that SMARTe "profits from its data publishing activities"). But the Supreme Court made clear in *Bolger* that economic motivation is "insufficient by itself" to categorize speech as commercial. *Id.* at 67. As explained in *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1117 (9th Cir. 2021):

> [N]ot all types of economic motivation support commercial speech. A simple profit motive to sell copies of a publication or to obtain an incidental economic benefit, without more, does not make something commercial speech. Otherwise, virtually any newspaper, magazine, or book for sale could be considered a commercial publication.

And so, courts have repeatedly held that the publication of phone numbers as part of some economic enterprise does not make the speech "commercial" under the First Amendment. *See, e.g., Dex Media West, Inc.*, 696 F.3d at 962 (phone numbers in telephone directory were not commercial speech); *Vrdolyak,* 206 F. Supp. 3d at 1384 (N.D. Ill. 2016) (directory's inclusion of advertisements did not transform the entire directory into commercial speech); *Jackson,* 2025 WL 2407201, at *10 (disclosure of phone numbers of public officials was not commercial speech). And finally, as explained in § IV(A), *supra*, this District Court has already held that business-to-

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

business corporate intelligence platforms do not use individuals' information (inclusive of cellular phone numbers) for a commercial purpose under statutory right of publicity protections.[10]

Because the phone numbers published on SMARTe's Platform are not commercial speech, this Court must apply strict scrutiny.

### 3. The PTFA's Listing Provision Fails Strict Scrutiny.

Because the Listing Provision is a content-based regulation, it is "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. To meet this standard, the Listing Provision must be the "least restrictive means to further the [government's] articulated interest." *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). Because this standard is exceptionally demanding," *Meinecke v. City of Seattle,* 99 F.4th 514, 525 (9th Cir. 2024), "[i]t is rare that a regulation restricting speech because of its content will ever be permissible." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011). The Listing Provision fails strict scrutiny because it is (a) overinclusive, (b) underinclusive, and (c) not the least restrictive means available to achieve Colorado's purported legislative purpose.

### a. The Listing Provision is Overinclusive.

The Colorado Legislature originally enacted the PTFA to protect consumers from "fraudulent and deceptive commercial telephone solicitations," particularly those affecting "elderly, homebound, and otherwise vulnerable consumers." Colo. Rev. Stat. § 6-1-301. Well after its original enactment, the Colorado Legislature added the incongruous Listing Provision – a sweeping prohibition on the listing of any cellular telephone number for a commercial purpose without consent. This blanket restriction facially applies regardless of who owns or uses the

---

[10] This District Court's finding that such a platform did not constitute commercial use under right of publicity laws is of particular relevance because right of publicity laws exist within the framework of the First Amendment. At common law, publicity rights reflect a balance between an individual's right of publicity against another individual's right to free speech. *See e.g., White v. Samsung Elecs., Am., Inc*., 971 F.2d 1395, 1396 (9th Cir. 1992).

number, how the directory is used, how the number was obtained, or whether the number has already been widely shared or publicly disclosed. As a result, the Listing Provision sweeps far beyond efforts to curb "fraudulent and deceptive commercial telephone solicitations," effectively prohibiting any commercial use of cellular phone listings regardless of its association with telemarketing. Compare Colo. Stat. § 6-1-304(1) (regulating conduct of "commercial telephone sellers" which by definition is one engages in "commercial telephone solicitation") and § 6-1-304(4) (prohibiting *any* "person" from listing *any* cellular phone numbers). Indeed, the Listing Provision is so loosely drafted that it theoretically extends to the alleged listing of non-Colorado-based cellular phone numbers by another non-Colorado resident. Regulation of entirely extraterritorial conduct far exceeds the Colorado legislature's interest in safeguarding its own residents. This Court should hold that the Listing Provision is overinclusive.

### b. The Listing Provision is Underinclusive.

A statute is underinclusive when it "plac[es] strict limits on" some activities while allowing other activities that "create the same problem." *Reed*, 576 U.S. at 172 (2015). Under inclusiveness may indicate that a statute "does not actually advance a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015). The Listing Provision is underinclusive in at least two significant respects, each of which undermines the Colorado legislature's claimed interest in protecting consumers from fraudulent and deceptive commercial telephone solicitations. First, the Listing Provision selectively targets the listing of cellular phone numbers in commercial directories, while leaving other channels untouched through which the same information may be published. The Listing Provision allows anyone to list cellular phone numbers in non-commercial directories, or outside the context of a "directory" altogether, such as on non-directory websites, blogs, or in publications by schools, churches, or other nonprofits. These disclosures pose the same theoretical risk of misuse and potential "fraudulent and deceptive commercial telephone solicitations," yet they are entirely exempt from the law's restrictions. The statute thus arbitrarily distinguishes between commercial and non-commercial speech, even though the availability of the information, and any potential for its abuse, is functionally identical.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Second, the Listing Provision fails to include landline numbers (and other methods of contact that might be used for telemarketing) in any comparable restriction. The Legislature expressly stated that the PTFA was enacted to protect "elderly, homebound, and otherwise vulnerable consumers," yet the Listing Provision imposes no restriction whatsoever on the publication or use of landline numbers, despite their stronger connection to the demographic the regulation seeks to protect. In short, the Listing Provision's selective and inconsistent approach to regulating the disclosure of phone numbers reveals a fundamental underinclusiveness that allows equally harmful conduct to go unregulated and targets speech in ways that bear little connection to the stated goals of the statute.

### c. The Listing Provision is not Narrowly Tailored.

As the Supreme Court has made clear, "[i]f a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *United States v. Playboy Ent. Grp., Inc.,* 529 U.S. 803, 813 (2000). There are several less restrictive alternatives that would serve the Colorado Legislature's stated interest equally well, if not better, than the Listing Provision. The PTFA itself demonstrates many of these alternative, less restrictive approaches. For example, the PTFA requires telephone solicitors to register with the state, Colo. Rev. Stat. § 6-1-303(1), prohibits misrepresentations such as claiming a person has "won a contest," *id*. § 6-1-304(1)(e), or that a product is "free" if the seller charges or collects a fee, *id*. § 6-1-304(1)(f). The PTFA also imposes consumer protection requirements, including cancellation and refund rights for purchases made over the phone. *See id*. § 6-1-304(1)(b)-(c). Unlike the Listing Provision, these provisions of the PTFA target specific fraudulent conduct or regulate the behavior of telephone solicitors without broadly restricting protected speech based on its commercial nature.

Moreover, other states offer further examples of less restrictive and more precisely targeted approaches to prevent "fraudulent and deceptive commercial telephone solicitations." Colo. Rev. Stat. § 6-1-301. For instance, Minnesota and Texas statutes impose restrictions only on telecommunications service providers and incorporate notice-and-consent mechanisms that allow consumers to opt in before their numbers are listed. *See* Minn. Stat. Ann. § 325E.318; Tex. Util. Code § 64.202. In light of these clear and available alternatives, the Listing Provision's blanket

ban on publishing cellular phone numbers is not the least restrictive means of advancing the legislative goal.

* * *

For the reasons set forth above, the Listing Provision is overly inclusive, underinclusive, and is not narrowly tailored. For all of these reasons, this Court should find that the Listing Provision is facially unconstitutional.

## V.     CONCLUSION

For the reasons set forth above, this Court should dismiss Plaintiff's Complaint with Prejudice.

Dated:    December 15, 2025               CLARK HILL LLP

                                          */s/ Myriah V. Jaworski*
                                   By: _____
                                          Myriah V. Jaworski

                                   *Attorneys for Defendant SMARTe, Inc.*

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## CERTIFICATE OF SERVICE

I hereby certify that on **December 15, 2025**, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

Dated: December 15, 2025        By: */s/ Myriah V. Jaworski*
                                                Myriah V. Jaworski

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT