# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL AMBROZEWICZ, et al.,

Plaintiffs,

v.

6SENSE INSIGHTS, INC.,

Defendant.

Case No. 24-cv-07489-RS

**ORDER GRANTING MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiffs allege that Defendant 6Sense Insights, Inc. ("6Sense") violated several state laws by using their identities to promote its products and services without their written consent. 6Sense moves to dismiss their complaint or, alternatively, to strike certain portions of it. For the reasons explained below, the motion to dismiss is granted, and the motion to strike is denied as moot.

## II. BACKGROUND

Plaintiff Michael Ambrozewicz and five other named plaintiffs assert that he or she is a resident and citizen of either California, Illinois, Ohio, or Indiana. 6Sense, though incorporated in Delaware, has its principal place of business in San Francisco. According to the complaint, 6Sense provides a business-to-business sales and marketing platform known as "6Sense Revenue AI." The service allows users to acquire account intelligence and contact information for potential customers and business partners.

Plaintiffs aver that 6Sense's Revenue AI service is available in four plans, one of which is free and the other three of which require paid subscriptions of varying amounts. Visitors to the

6Sense website are encouraged to "Get Started for Free" with the unpaid plan, which provides access to a subset of the features available through a paid plan. Those features include the provision of "buyer discovery" and "contact and company data," based on 6Sense's collection of over 449 million buyer profiles, with 119 million verified business email addresses and 60 million direct-dial phone numbers in its database. Users of the company's free plan can search for and view a limited number of Company or People profiles in the database by using filters that narrow results based on location, skills and interests, company, website engagement, and other factors. A free plan user can also search for a specific person by name.

When a Free Plan user engages the search filters, Defendant's site produces a list of people who match the search parameters. The list includes personally identifying information including names, company affiliations, job titles, locations, and industries. The profiles also feature a phone and email icon, which the free plan user can select to unlock a person's contact information. Each unlocked contact costs 1 of the 50 "credits" that free plan users enjoy per month. Once the information is unlocked, 6Sense provides a hyperlinked message to "upgrade your plan to unlock more insights" just above the contact details of the unlocked contact. When a free plan user expends their 50th credit of the month, 6Sense provides a pop-up message that states "You are out of credits. Upgrade to the SI Team plan or wait for next month's credits." The paid plans that these messages link to offer more credits per month as well as additional features and services not at issue in this case. The pop-up, like the hyperlinked message, appears alongside the information identifying the profiled person.

Due to the appearance of their personally identifying information next to the "upgrade your plan" banner and the "you are out of credits" pop-up, Plaintiffs aver that Defendant "use[s] the identities of the people in its database to promote the sale of paid subscriptions." Compl., Dkt. No. 1 ¶ 39. Plaintiffs further aver that Defendant never sought or obtained their permission to use their identities in this manner nor has it compensated them. They are not customers of 6Sense and have never registered on the website, but they believe that 6Sense Free Plan users have searched for and viewed their information.

On behalf of themselves and all others similarly situated, Plaintiffs aver four right of publicity claims based on their varying states of residency (*i.e.*, California, Illinois, Indiana, and Ohio) as well as one claim piggybacking on the California right of publicity statute so as to be actionable under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq. See also* Cal. Civ. Code § 3344.  As relief, Plaintiffs seek a declaration that Defendant's actions violated the asserted statutes; damages; injunctive and other equitable relief as necessary; attorneys' fees and costs; pre- and post-judgment interest; and any other relief the Court deems just and proper.

### III. LEGAL STANDARD

**A.  Motion to Dismiss**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  This standard asks for "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense."  *Id.* at 679.

A motion to dismiss a complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's subject matter jurisdiction over the asserted claims.  It is the plaintiff's burden to prove jurisdiction at the time the action is commenced.  *Tosco Corp. v. Cmtys. For Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010); *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient

on their face to invoke federal jurisdiction." *Id.* Accordingly, when considering this type of challenge, the court is required to "accept as true the allegations of the complaint." *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001). By contrast, in a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations, and it may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.* Once a factual challenge has been raised to the court's subject matter jurisdiction, the party opposing dismissal must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

A motion to dismiss a complaint under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011). Dismissal may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at 1242 (internal quotation marks and citation omitted). When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (internal quotation marks and citation omitted).

### B. Motion to Strike

Rule 12(f) permits a court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. The purpose of a Rule 12(f) motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotation omitted). If there is any doubt whether the challenged matter might bear on an issue in

United States District Court
Northern District of California

the litigation, the motion to strike should be denied, and assessment of the sufficiency of the allegations left for adjudication on the merits. *See Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004). When striking a claim or defense, leave to amend should be freely given if doing so does not cause prejudice to the opposing party. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979).

## IV. DISCUSSION

### A. Motion to Dismiss for Lack of Standing

A plaintiff has Article III standing upon showing "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). In a class action, standing further requires each named plaintiff to satisfy independently these three irreducible requirements. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992). Defendant argues Plaintiffs lack standing to bring this case because the complaint's allegations are factually incorrect and the alleged injury is not traceable to 6Sense's conduct. There is no apparent challenge to the redressability of Plaintiff's alleged injuries.

#### 1. Injury in Fact

Defendant argues that five of the six named Plaintiffs self-inflicted their alleged injury because, according to a sworn declaration by its chief technology officer, Plaintiffs' counsel's agent DarrowAI was the only 6Sense user to have ever searched for them. In Defendant's view, the injury in fact requirement does not permit Plaintiffs' counsel to manufacture standing by inflicting harm upon themselves. Importantly, this argument presupposes that third-party viewership is a legal requirement for right of publicity plaintiffs to have standing, as several district courts have suggested. *See, e.g.*, *Ridgeway v. Spokeo*, 697 F.Supp.3d 979, 985 (C.D. Cal. 2023) (finding that a plaintiff did "not sufficiently plead[] an injury in fact to confer Article III standing because he [did] not allege[] that anyone actually searched for or viewed his [personal information]"); *see also Fry v. Ancestry.com Operations, Inc.*, No. 3:22-cv-140-JD, 2023 WL

2631387, at *5 (N.D. Ind. 2024) (stating that a plaintiff "would not have standing" where "his injury would be entirely self-inflicted"); *Verde v. Confi-Chek, Inc.*, No. 3:21-cv-50092-PGR, 2021 WL 4264674, at *4–*5 (N.D. Ill. 2021).

Plaintiffs do not dispute that their lawyer's agent was the only entity to have ever viewed five of the six named plaintiffs on the 6Sense platform. Instead, they attack the foundational assumption of Defendant's argument by contending that third-party viewership is not a necessary element of standing under a right of publicity claim. This position also finds support in various district court opinions. *See Braundmeier v. Ancestry.com Operations, Inc.*, No. 20-cv-7390-JC, 2025 WL 327768, at *4 (N.D. Ill. 2025) ("[T]hird-party viewership of the plaintiff's information is not required to establish standing to bring right of publicity claims under IRPA and other similar state statutes.") (discussing *Hoffower v. Seamless Contacts Inc.*, 736 F.Supp.3d 605 (N.D. Ill. 2024) (reaching the same conclusion)); *see also Nolen v. PeopleConnect, Inc.*, No. 3:20-cv-09203-EWC, 2023 WL 4303645, at *3 (N.D. Cal. 2023); *Fisher v. Instant Checkmate LLC,* No. 1:19-cv-4892-GF, 2022 WL 971479, at *10 (N.D. Ill. 2022).

The parties' dispute over the third-party viewership requirement overlooks the key issue— what is the alleged injury? Here, there are two: lost economic value and mental anguish. While the first type of injury may well require some form of third-party viewership, the latter does not. *See Nolen*, 2023 WL 4303645, at *3 ("The internet is not Schrödinger's cat, only existing once it has been seen. Webpages do not rest up in the ether until a viewer's click jolts them into being; rather, a webpage is published once it is publicly accessible.") (citing *Oja v. U.S. Army Corps of Engineers*, 440 F.3d 1122, 1130 (9th Cir. 2006)). As the *Nolen* court explained, "[t]he gist of the cause of action in a privacy case is not injury to the character or reputation, but a direct wrong of a personal character resulting in injury to the feelings . . . *The right of privacy concerns one's own peace of mind*." *Id.*, at *5 (quoting *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1002 (2008)). In other words, given that a right of publicity claim concerns the "anguish and helplessness individuals feel when their privacy is stripped away and their image published for commercial purposes without their consent," it is "[t]he loss of agency and control over her

United States District Court
Northern District of California

image" that causes a plaintiff's harm. *Id.* *Nolen*'s reasoning is persuasive. Because the crux of Plaintiffs' allegation of mental anguish concerns the loss of control over their personal information, "the fact that the advertisement *could* be generated at any point by any person" is all they need to establish injury in fact. *See id.*, at 6.

Buttressing this conclusion is the text of the cited right of publicity statutes, all of which lack any explicit third-party viewership requirements. *See* Cal. Civ. Code § 3344; *accord* 765 Ill. Comp Stat. Ann. 1075/30, *et seq.*; Ohio Rev. Code Ann. § 2741.02(A), *et seq.*; Ind. Code § 32-36-1, *et seq.* Given the text and purpose of these statutes, "there is no reason to write a new provision" into law by requiring a third-party viewer for standing. *See Nolen*, 2023 WL 4303645, at *6.

Defendant separately argues that Plaintiffs' claims are too conclusory to support Article III standing. To be sure, "conclusory assertion of 'hurt feelings'" are insufficient to establish mental anguish. *Cohen v. Facebook, Inc.*, 798 F.Supp.2d 1090, 1097 (N.D. Cal. 2011) ("Plaintiffs must, at a minimum, plead that they suffered mental anguish as a result of the alleged misappropriation, and a plausible supporting factual basis for any such assertion."). Yet, Plaintiffs have met that burden here. They specifically plead that "Defendant's actions have created doubt and worry . . . about [their] ability to control how others use" their identities to promote their products. Compl. ¶ 56. They further aver, as a matter of fact, that they do not want 6Sense to use their identities for commercial purposes. *See, e.g.*, *id.* ¶ 53. These allegations suffice to demonstrate a factual basis for the harm of mental anguish: Plaintiffs do not want their information to be used commercially by 6Sense, but Defendant continues to do so, making them feel doubt and worry.

Since a claim of mental anguish in a right of publicity case does not require third-party viewership to show injury in fact, Defendant's fact-based arguments for finding a lack of standing miss the mark. Here, Plaintiff's allegations of doubt and worry caused by Defendant's commercial use of their identities are sufficient to establish injury in fact.[1]

---

[1] Since Plaintiffs have plausibly alleged mental anguish, this order does not reach the question of whether the complaint's allegations of economic harm suffice to plead Article III standing. Courts

United States District Court
Northern District of California

### 2. Causation

Defendant likewise asserts that 6Sense could not have been the cause of the five out of six injuries that Plaintiffs self-inflicted because their lawyers' agent caused the harm.[2]  Essentially duplicative of Defendant's previous attack on injury in fact, this argument also fails to undermine standing.  The relevant alleged harm in this case is not merely that other 6Sense users saw the names of the Plaintiffs next to the advertisement; it is that Plaintiffs suffered doubt and worry about their ability to control the commercial use of their identities as a result of 6Sense's publication of their names in a way that it can be seen alongside the advertisement.  *See Nolen*, 2023 WL 4303645, at *3.  Because third-party viewership is irrelevant to the standing analysis on a claim of mental anguish, Plaintiffs have Article III standing to invoke their statutory right of publicity.[3]  *Id.*; *see also Braundmeier*, 2025 WL 327768, at *4 (internal citation omitted).

### B.  Motion to Dismiss For Failure to State a Claim

All the Right of Publicity laws invoked by Plaintiffs define the violation of a right of publicity as something that occurs when one person "uses" another person's identity in relation to selling or advertising products or services, without that individual's consent.[4]  Thus, to state a

---

in this district and others have split on the issue.  *Compare Callahan v. PeopleConnect*, No. 3:20-cv-09203-EWC, 2021 WL 5050079, at *14 (N.D. Cal. 2021) ("If a defendant uses a plaintiff's name and/or likeness or advertise, then it can reasonably be inferred that the name and/or likeness has some economic value, even if small."), *with Callahan v. Ancestry.com Inc.*, No. 20-cv-8437-LB, 2021 WL 783524, at *4-5 (N.D. Cal. Mar. 1, 2021) (finding a lack of injury in fact, in part, because plaintiffs "did not show that they had a commercial interest in their images that precluded the platform's use of them").  This order expresses no opinion on the issue.

[2] Defendant concedes that Ambrozewicz's information appears to have been searched for by non-agents of his counsel.

[3] While Defendants have since removed Plaintiffs' information from its site, this does not moot standing because it is not "*absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221 (2000) (internal quotation marks and citation omitted) (emphasis added).

[4] *See generally* Cal. Civ. Code § 3344(a) (prohibiting "us[ing] another's [persona] in any manner, on or in products . . . or for purposes of advertising or selling" without consent); 765 ILCS 1075/5 and 1075/30 (defining the prohibited "commercial purpose" as "public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product" or "(ii) for purposes of advertising or promoting products" without written consent); Ind. Code § 32-36-1-2 and 32-36-1-8 (defining the prohibited use for a commercial purpose as "the use" of a persona

United States District Court
Northern District of California

claim under these statutes and as applied to this case, Plaintiffs must plausibly allege that Defendant "used" their identity in connection with the sale or advertising of its paid plans. Plaintiffs aver that they've done so: they allege that Defendant uses their names to entice free plan members to purchase a subscription by featuring their names beneath the banner advertisement or pop-up.

Defendant argues that Plaintiffs fail to make out their claim for several reasons, none of which, standing alone, suffice to persuade. First, it contends that a right of publicity violation requires using the plaintiff's identity "to advertise or promote a separate product or service." *Brooks v. Thompson Reuters Corp.*, No. 21-cv-1418-EMC, 2021 WL 3621837, at *4 (N.D. Cal. 2021). This is relevant because courts have long permitted companies to sell products that contain individuals' identifying information. *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1100–01 (7th Cir. 2022). In 6Sense's view, it merely provides services that contain identifying information, and the free version is not separate from the subscription one in any relevant way.

Plaintiffs retort that the subscription plans *are* a separate product, and that their likenesses, as accessed through the free version, are being used to advertise *that* product. Fair enough—this is the pleadings, and they are the nonmoving party entitled to reasonable inferences in their favor. In other words, nobody disputes whether 6Sense is allowed to sell access to personal information; this case is about whether it can freely display that personal information underneath an advertisement for a separate, paid version.

Second, Defendant notes that the platform is not publicly available—users must register and be verified to use its search function and, by extension, to encounter the advertisement-overlaid-on-personal-information that Plaintiffs aver. This argument is unavailing: a person may "use" another person's persona for commercial purposes even in a limited market. *See Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 809–10 (N.D. Cal. 2011) (finding plausible commercial use

"on or in connection with a product . . . or commercial activities" or "[f]or advertising or soliciting purchases . . . or for promoting commercial activities" without written consent); Ohio Rev. Code § 2741.01 and 2741.02 (defining the prohibited "commercial purpose" as "the use of or reference to an aspect of an individual's personal" in, *inter alia*, "connection with a place, product . . . or other commercial activities" or "for advertising" without written consent).

United States District Court
Northern District of California

under California's right of publicity law notwithstanding that content was only visible to registered users of defendant's platform).

Next, Defendant contends that the claims fail because it does not use Plaintiffs' information to lure users into paid plans; a free plan user can continue along on a free plan indefinitely, so long as they accept the limitation of having just 50 credits per month. This model is distinguishable from many others in which courts have allowed right of publicity claims to proceed against services that provide a free trial and then inform users that they must pay to access additional information about a given person. *See, e.g.*, *Batis v. Dun & Bradstreet Holdings, Inc.*, No. 22-cv-01924-MMC, 2023 WL 1870057, at *1 (N.D. Cal. Feb. 9, 2023), *aff'd*, 106 F.4th 932 (9th Cir. 2024). This argument likewise fails to pass muster; nothing in the cited statutes suggests that commercial use is acceptable so long as it is limited to free users. Posting a flyer featuring a celebrity's face on a telephone pole flyer for a new store opening could be commercial use, notwithstanding the fact that people who encounter the flyer encounter it for free. That the 'free trial' aspect of the other challenged services featured in Defendant's cited cases does not mean that its absence here is somehow determinative.

Somewhat relatedly, Defendant underscores how its product does not withhold or tease an individual's information to promote product sales—something that apparently every other right-of-publicity case against an online information platform to have beaten a motion to dismiss has featured. *See e.g.*, *Kellman v. Spokeo, Inc.*, 599 F.Supp.3d 877, 884 (N.D. Cal. Apr. 19, 2002) ("[t]o advertise paid subscriptions to the site, Spokeo uses 'teasers' – profiles of real people with some information redacted"); *Martinez v. ZoomInfo Techs, Inc.*, No. 21-cv-5725-MJP, 2022 WL 1078630, at * 1 (W.D. Wash. April 11, 2022) ("[defendant] displays 'teaser profiles' showing some information about the individual and offering 'full access' in exchange for a fee-based subscription"); *Nolen*, 2023 WL 4304645, *7 (same). Plaintiffs do not have a fulsome rebuke to this point, citing no case law on point. Instead they simply highlight that "the revelation of additional information about Plaintiffs is not an element of the right of publicity claim." Opp. Br., Dkt. No. 28, at 10. Although (as explained *infra*) Defendants have a strong point here, the fact that other cases all featured a trait that this case lacks does not necessitate a different outcome.

Ultimately, the winning argument is that Defendant's use of the Plaintiffs' information is not commercial in nature. After all, right to publicity laws "do not prohibit the use of someone's identity in a product. They prohibit . . . commercial use[.]" *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1102 (7th Cir. 2022) (cleaned up). *See also Thompson v. Getty Images, Inc.*, No. 13-cv-1063, 2013 WL 3321612, at *2-3 (N.D. Ill. July 1, 2013) (no "commercial purpose" where the allegation was that a defendant "used [plaintiff's] photos to promote the sale of a product, i.e., his photos"); *Almeida v. Amazon*, 456 F.3d 1316, 1326 (11th Cir. 2006) (use of a person's photo in "book cover images is not an endorsement or promotion of any product or service, but is merely incidental to, and customary for, the business of internet book sales") (applying Florida right to publicity law)). When confronting a statutory use of the word "use," context is everything. "'"[U]se" takes on different meanings depending on context,' and because it 'draws meaning from its context . . . we will look not only to the word itself, but also to the statute and the [surrounding] scheme, to determine the meaning[.]'" *Dubin v. United States*, 599 U.S. 110, 118 (2023) (quoting *Bailey v. United States*, 516 U.S. 137, 143 (1995)). In right to publicity statutes, the context concerns the commercial use of an individual's identity. Plaintiffs' allegations, on the other hand, present no commercial nexus between any one individual identity and the website's banner / pop-ups.

For example, "[v]irtually all right of publicity cases involve the use of a person's name or likeness to advertise a separate product or service", *Brooks*, 2021 WL 3621837, at *4, allegations of which are completely absent here. The alleged advertisement has no connection to the underlying persons (who, indeed, could be anyone in the database). This is nothing like the classic right of publicity case, which most often concerns a celebrity given the value of that person's *individual* identity. *See White v. Samsung Elecs., Am., Inc.*, 971 F.2d 1395, 1396 (9th Cir. 1992) ("The right of publicity has developed to protect the commercial interest of celebrities in their identities. The theory of the right is that a celebrity's identity can be valuable in the promotion of products."). Although courts have recognized that right of publicity statutes can also protect non-celebrity identities, those cases have likewise concerned the sort of use that implicates the individual in question. *See Callahan*, 2021 WL 5050079, at *15. That is not how Defendant uses

United States District Court
Northern District of California

the information here.

Another commercial use of individual identity not present in this case occurs when the identifying information is used as bait, such as in the teaser context. *See, e.g.*, *Martinez*, 2022 WL 1078630, at \*6 (denying motion to dismiss where the teaser profile invited users "to learn more about" the individual plaintiff). In such cases, a user's interest in an individual persona is leveraged to advertise the paid product or service. *See also Batis*, 2023 WL 1870057, at \*1. Unlike in those instances, Defendant does not leverage anyone's individual persona to advertise its products. The banner is always present, no matter whose names appear on the page. The pop-up allegedly always appears at the expiration of one's credits, no matter whose profile was the last one purchased.

As another court helpfully highlighted, the ultimate question here is "whether one views defendant's actions as providing a[] listing or directory, with advertisements placed on it . . . or whether one views each [individual] profile as an advertisement for the [paid plans]." *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388 (N.D. Ill. 2016). Defendant provides a directory with advertisements on it; the directory (and the individual information it contains) are not advertisements for the paid services Defendant also provides. In *Vrdolyak*, the court agreed with an interrelated 12(b)(6) and First Amendment argument that a Defendant's use of individual information was non-commercial in nature. The defendant provided an online attorney directory that featured, alongside freely accessible individual attorney profiles, advertisements for its own paid products as well as advertisements that other attorneys paid to promote. The *Vrdolyak* court noted that the plaintiff could not "point to a single [] Advertisement that mentions his name, promotes any of his noteworthy or distinctive traits or references his identity in any other manner." *Id.* at 1388. So too here, yet another demonstration of the extent to which Defendant's "use" of Plaintiffs' information is not sufficiently commercial to fall within the scope of the right of publicity claims they bring. "[T]o hold otherwise would lead to the unintended result that any entity that publishes truthful newsworthy information about individuals such as teachers, directors and other professionals, such as a newspaper or yellow page directory, would risk civil liability simply because it generated revenue from advertisements placed" alongside the underlying

identifying information. *Id.* at 1389.

In short, because Plaintiffs fail to allege plausibly that Defendant is using their individual personas in a commercial way actionable under the cited right of publicity statutes, Defendant's motion to dismiss those claims pursuant to Rule 12(b)(6) is granted.[5]

### C. UCL Claim

Plaintiffs' UCL claim requires a showing of unlawful or unfair conduct by Defendant, which they concede is the alleged right of publicity violations. As just explained, the right of publicity allegations are insufficient to state a claim. As a result, Plaintiffs' fail to allege facts showing any unlawful or unfair conduct and so likewise fail to state a claim.

### V. CONCLUSION

Plaintiffs' complaint is dismissed for failure to state a claim, with leave to amend within 30 days of this order. In the event no amended complaint is filed, this action will be dismissed without prejudice and without further notice. Defendant's motion to dismiss having been granted, its motion to strike is denied as moot.

**IT IS SO ORDERED**.

Dated: May 2, 2025

RICHARD SEEBORG
Chief United States District Judge

---

[5] Having determined that Plaintiffs fail to state claim, no First Amendment analysis is needed.

ORDER GRANTING MOTION TO DISMISS
CASE NO. 24-cv-07489-RS

13

United States District Court
Northern District of California